UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Hardee's Food Systems, Inc., | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 09-4083 |
| | ) | |
| Shree Krishna Food, L.L.C.; Sam Patel; and | ) | |
| Natvarbhai Patel, | ) | |
| Defendants | ) | |

## ORDER AND OPINION

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the court is the Plaintiff's motion for partial summary judgment (#37). The motion is fully briefed, and I have carefully considered the arguments and evidence of the parties. As explained herein, the motion is GRANTED.

## JURISDICTION

Plaintiff Hardee's Food Systems, Inc., is a North Carolina corporation with its principal place of business in St. Louis, Missouri. Defendant Shree Krishna Food, L.L.C., is an Illinois limited liability company with its principal place of business in Geneseo, Illinois.  Its members are[1] Eric Fernandes, a citizen of Illinois, and Anil Patel, a citizen of Minnesota. Shree Krishna's citizenship is therefore Illinois and Minnesota. Defendants Sam Patel and Natvarbhai Patel are individuals who are each citizens of the state of Illinois. The amount sought as damages is $776,430.22.

---

[1]The complaint does not include information about the members of Shree Krishna. Plaintiffs were directed to and did file a supplemental jurisdictional statement to cure this deficiency. See Doc. #53.

Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.

## SUMMARY JUDGMENT GENERALLY

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.

The court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant, Erdman v. City of Ft. Atkinson, 84 F.3d 960, 961 (7th Cir. 1996); Vukadinovich v. Bd. of Sch. Trustees, 978 F.2d 403, 408 (7th Cir. 1992), cert. denied, 510 U.S. 844 (1993); Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990); DeValk Lincoln-Mercury, Inc. V. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987); Bartman v. Allis Chalmers Corp., 799 F.2d 311, 312 (7th Cir. 1986), cert. denied, 479 U.S. 1092

(1987), and construing any doubts against the moving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970); <u>Trotter v. Anderson</u>, 417 F.2d 1191 (7th Cir. 1969); <u>Haefling v. United Parcel Serv., Inc.</u>, 169 F.3d 494, 497 (7th Cir.1999).

Neither the moving party nor the responding party may simply rest on allegations; those allegations must be supported by significant probative evidence. <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 290 (1968). As Fed.R.Civ.Proc. 56(e) makes clear, a party opposing summary judgment must do more than rely on the allegations contained in pleadings. Rather:

> [T]he adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

The parties must identify the evidence (i.e. those portions of the pleadings, depositions, answers to interrogatories, admissions, affidavits, and documents) that will facilitate the court's assessment. <u>Waldridge v. American Hoechst Corp.</u>, 24 F.3d 918, 922 (7th Cir.1994). As the Seventh Circuit has held, "[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." <u>Herman v. City of Chicago</u>, 870 F.2d 400, 404 (7th Cir.1989). See also, <u>Bell, Boyd & Lloyd v. Tapy</u>, 896 F.2d 1101, 1103- 04 (7th Cir.1990); <u>L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.</u>, 9 F.3d 561, 567 (7th Cir.1993).

The Local Rules of this Court specify the form and content for all motions for summary judgment and responses and replies thereto. CDIL L.R.7.1(D). This Rule requires that a response to a motion for summary judgment include a specifically response to each numbered statement of

fact contained in the motion and cite to evidence in the record to support any numbered statement of fact which it contends is disputed. Id.

The Seventh Circuit has repeatedly put their imprimatur on strict enforcement of local rules, sustaining entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts. See, Waldridge., 24 F.3d at 922 (collecting cases). The factual statements required by such local rules "are not merely superfluous abstracts of the evidence. Rather, they are intended to alert the court to precisely what factual questions are in dispute and point the court to the specific evidence in the record that supports a party's position on each of these questions. They are, in short, road maps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own." See, e.g., Bell, Boyd & Lloyd, 896 F.2d at 1102-03; Schulz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir.1992).

Where a party fails to meet its requirements in the face of summary judgment, the court may ignore the non-conforming submission, deeming the opposing party's proposed findings of fact admitted and then determining whether those facts entitle the moving party to judgment as a matter of law. See, Salvadori v. Franklin Sch. Dist., 293 F.3d 989, 992 (7th Cir.2002); Hedrich v. Bd. of Regents of Univ. of Wis. Sys., 274 F.3d 1174, 1178 (7th Cir.2001); Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994); Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir.2003).

### DEFENDANTS' RESPONSE TO THE MOTION

As Plaintiff has pointed out, Defendants' response to the pending motion falls far short of the requirements established by this Court's Rules. The entire response is 6 pages long. The last 2

pages are wholly unresponsive to the arguments made by Defendants[2]. In the other 4 pages, Defendants failed to respond directly to the 24 numbered factual statements contained in Plaintiff's motion. The statement of facts contained in the response contains no citations to the record; various documents are simply appended. Other than reference to summary judgment standards, the response contains not one citation to the substantive law that governs this contract dispute.

Each of these identified deficiencies relates to a part of a summary judgment response that is required under CDIL LR 7.1D, so the response is entirely inadequate under that Rule. For that reason alone, this Court treats the facts as stated in the Motion and the Reply as undisputed. The only matter before the Court is whether those facts entitle Plaintiff to the partial judgment it seeks. As the discussion below reveals, those facts do entitle Plaintiff to such a partial judgment.

There is one additional comment that must be made about the Response. Attached to the Response is the Affidavit of Defendant Samir Patel. In paragraph 8 of that Affidavit, he attempts to contradict an Affidavit tendered by the Plaintiff by pointing out that Defendants "have contested certain of the allegations set forth" in the Complaint and that the Defendants "continue to contest and otherwise to deny the accuracy and truthfulness of the allegations set forth therein." It has long been the law that a party may not simply rest on allegations; those allegations must be supported by significant probative evidence. Denials of allegations, without support in the evidentiary record, do not create an issue of fact sufficient to defeat summary judgment.

---

[2]Plaintiff's motion is directed solely at the period prior to April 1, 2009. Pages 5-6 of Defendants' response deals with the period after April 1, 2009.

## UNDISPUTED FACTS

Hardee's Food Systems, Inc. ("HFS") is the owner and franchisor of Hardee's restaurants. HFS's affiliated company, Santa Barbara Restaurant Group ("Affiliate"), is the owner of Red Burrito Restaurants. These two companies developed a "dual concept restaurant" referred to as Hardee's/Red Burrito Restaurants. They have a trademark license agreement pursuant to which HFS has all rights and obligations as the franchisor to license others to operate such restaurants.

Shree Krishna Food LLC ("Shree Krishna") was at all pertinent times owned, controlled and/or operated in whole or in part by Sam Patel and Natvarbhai Patel ("the Patels").

In October 2007, Shree Krishna and HFS entered into Franchise Agreements that gave Shree Krishna the right to operate 26 Hardee's and/or Hardee's/Red Burrito Restaurants in Illinois, Missouri and Iowa. At a later date, an additional franchise for a restaurant in Morton, Illinois was added, making a total of 27 Franchise Agreements. The terms and conditions of these Franchise Agreements were identical, except for the location of the restaurant and a modified royalty rate provision in the Morton Franchise Agreement. [A copy of the general Franchise Agreement and the Morton Franchise Agreement is attached to the summary judgment motion at Tab 3]. Concurrently with the execution of each of these Franchise Agreements, the Patels executed personal guaranties by which the Patels guarantied all of Shree Krishna's obligations under the Franchise Agreements.

In addition to the Franchise Agreements, Shree Krishna entered into Sublease Agreements with HFS for 14 restaurants. Pursuant to these identical (except for location) Sublease Agreements, Shree Krishna was required to meet certain continuing obligations to HFS, including payment of monthly rent, property taxes, and other fees. The Patels also personally guarantied Shree Krishna's

obligations under the Sublease Agreements. [A copy of one of the Sublease Agreements is attached to the summary judgment motion at Tab 4].

Shree Krishna defaulted on the terms of the Franchise Agreements and the Sublease Agreements in party by failing to meet its monetary obligations to HFS. In December of 2008, HFS notified Shree Krishna of its default. The defaults were not cured, and HFS terminated all of the Franchise Agreements and terminated Shree Krishna's right to possession under the Sublease Agreements. Because Shree Krishna was trying to find a buyer for the franchises and sublet restaurants, HFS allowed Shree Krishna a temporary license, expiring at midnight on March 31, 2009, to continue operating the restaurants and to continue in possession of the subleased restaurants.

On April 1, 2009, HFS, Shree Krishna and the Patels (as guarantors of Shree Krishna) entered into a Temporary License and Access Agreement ("Temporary License Agreement"). [A copy of the Temporary License Agreement is attached to the motion at Tab 5.]. This Temporary License Agreement was amended on June 5, 2009 by the same parties. [A copy of the Amended Temporary License Agreement is attached to the motion at Tab 6]. Ultimately the Temporary License Agreement was extended to Sept. 1, 2009. It provided for operation of the restaurants under the terms of the terminated Franchise Agreements and Sublease Agreements, as modified by the Temporary License Agreement. In addition, they provided that the Patel's personal guaranties would continue in full force and effect for all obligations under both the terminated Franchise Agreements, the terminated Sublease Agreements, and the Temporary License.

One key provision of the Temporary License Agreement was the acknowledgment and agreement by the Patels and Shree Krishna that, as of April 1, 2009, they owed HFS $749,808.04.

(Tab 5, p.4). After giving them credit for payments that had been made, Plaintiff asserts that the amount now owing for that period of time is $466,251.26.

Another key provision is captioned **<u>General Release by Franchisee and Guarantors.</u>** This section reads in pertinent part that Shree Krishna and the Patels release HFS "with respect to any and all claims ...including, without limitation, ... claims arising out of ... HFS' performance of its obligations under the Franchise Agreements, [or] the Sublease Agreements..."

The Temporary License Agreement includes an integration clause. This clause provides that the Temporary License Agreement, as well as any other agreement executed in furtherance thereof and any documents referred to in it, "constitute the entire, full and complete agreement." The Temporary License Agreement also provides that it is governed by the law of Missouri.

Defendants were unable to meet their obligations under the Temporary License Agreement. On October 15, 2009, a letter was sent to them about the latest default. [A copy of the letter is attached to Plaintiff's Reply brief]. The letter stated HFS's understanding that Defendants had found a buyer for the restaurants and that the sale had closed. It advised that all outstanding amounts were due within 10 days. Attached to the letter was a "detailed accounting" of the delinquent amounts, breaking down by category and then by month the amounts Defendants owed under the various Agreements. The total shown on this document is $776,430.22.

Upon non-payment, this case was filed. In the Amended Complaint (Doc. #35), HFS seeks damages as well as preliminary and permanent injunctive relief. Discovery in this case has concluded, and HFS has filed the instant motion for partial summary judgment. In that motion, HFS seeks judgment as to liability and damages for the period before April 1, 2009. Injunctive relief and damages for the period after that date are not addressed.

## MOTION FOR PARTIAL SUMMARY JUDGMENT

In this motion for partial summary judgment, HFS seeks a finding of liability for the amount of $466,251.26 for the period up to April 1, 2009. In its response, the Defendants essentially argue that the representation they made in the Temporary License was the result of "months of bare-knuckled default negotiations coupled with months of stonewalling by Plaintiff ... in the efforts to obtain relief from the crushing debt burden pitted on these franchisees due to Plaintiff's indifference to the Defendants' complaints regarding Plaintiff's refusal to properly allocate resources in support of the various franchises." (Response, at p.4). The question of what resources HFS should have allocated or credited to them raises questions of fact as to the amount owed as of April 1, 2009, when the Temporary License Agreement was signed.

There are two aspects to this response. First, nothing whatsoever in this response belies the conclusion that the Court should enter partial judgment in favor of HFS on liability for the period prior to April 1, 2009. The *only* possible dispute is the amount of damages for that period.

The second aspect is whether the Defendants have succeeded in raising "any genuine dispute as to any material fact" relating to the amount sought for that period prior to April 1, 2009. As explained below, they have not.

Defendants acknowledged in the Temporary License Agreement that they owed a particular amount. Statements made in contracts are admissible admissions against the party making the statement. See, e.g., <u>Schonfeld v. Hilliard</u>, 218 F.3d 164, 180-81 (2d Cir. 2000)(statement of purchase price in contract admissible as party admission); <u>Omar Internat'l Inc. v. ALAF General Organization</u>, 817 F. Supp. 394, 399 (S.D.N.Y. 1993)(schedule of accrued interest prepared by bank admissible as admission by bank of the amount of interest owed); AM Internat'l Leasing Corp. v.

Nat'l Council of Negro Women, Inc., 627 F. Supp. 1302, 1304 (N.D.Ill. 1986)(statement in lease that plaintiff was "owner" of equipment admissible to show ownership).

Defendants halfheartedly suggest that the Court not hold them to that admission because HFS also breached the franchise agreement. That suggestion is rejected. The General Release provision of the Temporary License Agreement nullifies any such challenge to HSF's performance under the Franchise Agreement.

Both of these conclusions are indisputable unless, as Defendants have vaguely suggested, entry into the Temporary License Agreement was coerced by "financial duress" that caused them to make the admission and give the release. Whether the facts are sufficient to support a claim of duress is a question of law for the Court. Anselmo v. Mfg Life Ins. Co., 771 F.2d 417, 419 (8th Cir. 1985)(applying Missouri law).

Under Missouri law, "the payment of money or the making of a contract may be under such circumstances of business necessity or compulsion as will render the same involuntary and entitle the party so coerced to recover the money paid, or excuse him from performing the contract." Steinger v. Smith, 358 Mo. 39, 213 S.W.2d 396, 400 (1948). In Vanguard Packaging, Inc. v. Midland Bank, 871 F.Supp. 348, 352 (W.D.Mo.,1994), the Court began with that black letter law and went on to directly confront and thoroughly discuss the question of what "circumstances of business necessity or compulsion" excuses one from contractual performance under Missouri law.

The "central question with respect to duress is whether, considering all the surrounding circumstances, one party to the transaction was prevented from exercising his free will by the threats or wrongful conduct of the other." Id. [citations omitted]. See also, Anselmo, 771 F.2d at 420 (to

invalidate a release, party must show that wrongful acts caused them to be "bereft of the quality of mind essential to the making of a contract.")

Next, the <u>Vanguard</u> Court discussed what factors should be considered when attempting to determine whether a plaintiff was "bereft of its free will", noting that those factors should include the age, sex, capacity, situation, and relation of the parties. <u>Vanguard</u>, 871 F.Supp. at 352 [citations omitted].

It is also true, noted the <u>Vanguard</u> Court, that duress does not exist where there is knowledge of the facts and an opportunity for investigation, deliberation and reflection <u>Id.</u> [citations omitted]. However, if despite the opportunity to reflect, the party claiming economic duress was left with no alternative other than the one forced upon it, the general rule obviously does not apply. <u>Id.</u> [citations omitted].

In order to establish a claim of economic duress, there must be a showing that the wrongful act, which overcame his free will, caused him to do something he would not have otherwise done. And finally, because the financial necessity of a party, not caused by the other party to a contract, does not constitute duress, the party claiming duress must show that its alleged "economic exigency was *caused* by the wrongful act" of Defendant. <u>Id.</u> [emphasis in original, citations omitted].

In sum, to establish a claim of economic duress, Defendants must provide evidence sufficient to create a question of fact, that HFS created a situation of economic exigency for them by performing a wrongful act which, in light of all relevant circumstances, overcame their free will and forced them to do something they would not have otherwise done.

The facts in <u>Vanguard</u> are instructive as to whether a particular exigent financial circumstance was created by a party to a contract. In <u>Vanguard</u>, the plaintiff corporation alleged that

the defendant bank had conditioned an additional loan on the purchase of bank stock. The court found that there was no economic duress by this tying agreement, because the economic exigency that created the need for the loan existed prior to the request for the loan.

Similarly, in the case now before this Court, the Defendants' financial difficulties preceded their execution of the Temporary License Agreement. In fact, Defendants' own statement of fact in their response to the pending motion includes the following: "Due to the economic downfall of 2008, Defendants were unable to maintain their payments to Plaintiff under the original franchise agreements." (Response, p.2, ¶ 5). Any financial exigency was not created by HFS.

Likewise, the record fully negates any implication that any conduct of HFS wholly deprived the Defendants of their ability to exercise their free will. Defendants entered - freely and voluntarily - into a huge business transaction at the outset, fully cognizant of their financial (and other) obligations under the Franchise Agreements. The fact that their high hopes for success were dashed by the economic downturn did not relieve them of those obligations. The fact that they were apparently able to find a buyer for the restaurants is an indication that their free will was still extant, and the fact that HFS was willing to allow the defaults to exist for several additional months so that the sale could culminate is certainly not an indication that HFS did anything to stifle that free will. Yes, the economic obligations were crushing, but they arose from voluntary acts of the Defendants and from the economic downturn, not from conduct of HFS.

Defendants entered into the Franchise Agreements and the Sublease Agreements freely and willingly. The "crushing" debt of which they now complain was debt that arose from their obligations under those agreements, not the Temporary License Agreements; all the latter did was incorporate what was already delinquent under the former. There was no economic coercion with

respect to the initial Franchise and Sublease Agreements. If Defendants had not entered into the Temporary License Agreements, the defaults would have been immediately due and owing. Inclusion in that Agreement of the dollar value of the default or the release of claims related to HFS's performance was no more coercive than inclusion of any of the other terms. This is not the type of wrongful act that will support a claim under Missouri law. In fact, it is not wrongful conduct at all.

I conclude that Defendants have fallen far short of showing that they were somehow coerced into entering into the Temporary License Agreement or the terms contained therein. The amount of their default is as it was stated in the Temporary License Agreement

In the motion, Plaintiff states that after Defendants are given credit for all payments subsequently received, the amount still owed to HFS for the time before April 1, 2009, is $466,251.26. Defendants have submitted no evidence that calls into question that statement. Plaintiff is awarded that amount for the period prior to April 1, 2009.

## CONCLUSION

Plaintiff's motion for partial summary judgment (#37) is GRANTED as stated herein. This matter is set for a telephone status conference on Tuesday, May 3, 2011 at 11:00 a.m. (Court to set up the call), at which time a final pretrial conference and jury trial will be scheduled.

ENTERED ON April 14, 2011

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE